**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. _____ |
| | ) | |
| v. | ) | Hon. _____ |
| | ) | |
| ARMIL/CFS INC., SIPI METALS CORP., | ) | Mag. J. _____ |
| PEOPLES GAS LIGHT AND COKE | ) | |
| COMPANY, MIGUEL ANGEL SALGADO, | ) | |
| SHERON WILLIAMS AS GUARDIAN OF | ) | |
| THE ESTATE OF JEFFREY MOORE, | ) | |
| DISABLED, and SHERON WILLIAMS, | ) | |
| Defendants. | | |

**CINCINNATI INSURANCE COMPANY'S
<u>COMPLAINT FOR DECLARATORY JUDGMENT</u>**

Plaintiff CINCINNATI INSURANCE COMPANY ("Cincinnati") brings this action for declaratory judgment against ARMIL/CFS INC. ("Armil"); SIPI METALS CORP. ("Sipi"); PEOPLES GAS LIGHT AND COKE COMPANY ("Peoples Gas"); MIGUEL ANGEL SALGADO ("Salgado"); and SHERON WILLIAMS AS GUARDIAN OF THE ESTATE OF JEFFREY MOORE, DISABLED and SHERON WILLIAMS, individually (together, "Moore"). In support thereof, Cincinnati states as follows:

1. This is a declaratory judgment action brought pursuant to 28 U.S.C § 2201 and 28 U.S.C. § 1332 to determine the rights and obligations of the parties under a commercial liability insurance policy.

2. This action will resolve a dispute among (a) Cincinnati and (b) its insured Armil; plaintiffs Moore and Salgado; and cross-claimants Sipi and Peoples Gas, as to

whether Armil is entitled to liability coverage under a policy issued by Cincinnati, in relation to two consolidated lawsuits filed against Armil.

## PARTIES, JURISDICTION AND VENUE

3. Cincinnati Insurance Company is a corporation organized under the laws of Ohio with its principal place of business in Ohio. For the purposes of 28 U.S.C. § 1332, Cincinnati is a citizen of Ohio.

4. Armil/CFS Inc. is a corporation organized under the laws of Illinois with its principal place of business in Illinois. For the purposes of 28 U.S.C. § 1332, Armil is a citizen of Illinois.

5. Miguel Salgado is a resident and citizen of Illinois. For the purposes of 28 U.S.C. § 1332, Salgado is a citizen of Illinois. Salgado is one of the underlying plaintiffs and is named as a party to this case in order to bind him to the outcome of this coverage dispute.

6. Sheron Williams, both individually and as Guardian of the Estate of Jeffrey Moore, Disabled (together, "Moore") is a resident and citizen of Illinois. For the purposes of 28 U.S.C. § 1332, Moore is a citizen of Illinois. Moore is one of the underlying plaintiffs and is named as a party to this case in order to be bound to the outcome of this coverage dispute.

7. Sipi Metals Corp. is a corporation organized under the laws of Illinois with its principal place of business in Illinois. For the purposes of 28 U.S.C. § 1332, Sipi is a citizen of Illinois. Sipi is named as a party to this case in order to bind it to the outcome of this coverage dispute due to its cross-claim against Armil.

8. Peoples Gas Light and Coke Company is a corporation organized under the laws of Illinois with its principal place of business in Illinois. For the purposes of 28 U.S.C. § 1332, Peoples Gas is a citizen of Illinois. Peoples Gas is named as a party to this case in order to bind it to the outcome of this coverage dispute due to its cross-claim against Armil.

9. Moore and Salgado each filed a lawsuit seeking unspecified damages from Armil and others for bodily injuries from a furnace explosion. Sipi and Peoples Gas filed cross-claims against Armil for contribution. The liability limit of the policy issued by Cincinnati to Armil exceeds $1 million. The exposure to Cincinnati, including the cost of defending Armil and the damages sought by plaintiffs and cross-claimants from Armil, exceeds $75,000.00.

10. Jurisdiction for this matter is secure under 28 U.S.C. § 1332. The parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum.

11. Venue is appropriate under 28 U.S.C. § 1391(b)(2). The insurance policy at issue was issued to Armil in South Holland, Illinois; the accident underlying this coverage dispute occurred in Chicago, Illinois; and the underlying Salgado and Moore lawsuits are pending in the Circuit Court of Cook County, Illinois.

## **BACKGROUND**

**A.** **Underlying Lawsuits**

12. This insurance coverage dispute arises out of two lawsuits filed against Armil and others: *Miguel Salgado v. Sipi Metals Corp. et al.*, case no. 19 L 1516 (Cook County, IL) (the "Salgado Lawsuit") and *Sheron Williams as Guardian for the Estate of*

*Jeffrey Moore v. Sipi Metals Corp. et al.*, case no. 19 L 3358 (Cook County, IL) (the "Moore Lawsuit"). The Salgado and Moore Lawsuits are consolidated for discovery in the Circuit Court of Cook County under case no. 19 L 1516. In addition to Armil, the Salgado and Moore Lawsuits allege that several other entities are liable in whole or in part for their injuries.

13. A copy of the current complaint filed by Salgado (Second Amended Complaint) is attached as **Exhibit A**. A copy of the current complaint filed by Moore (Fifth Amended Complaint) is attached as **Exhibit B**. On September 15, 2020, Moore filed a motion for leave to file a Sixth Amended Complaint. That motion, with the attached proposed Sixth Amended Complaint, is attached as **Exhibit B-1.**

14. The Complaints filed by Salgado and Moore allege that on January 30, 2019, there was an explosion in a metal melting furnace at a facility operated by Sipi at 1720 N. Elston Avenue in Chicago (the "Accident"). That furnace is sometimes referred to as "Tillie" (the "Furnace"). Jeffrey Moore and Miguel Salgado were Sipi employees, working at or near the Furnace at the time of the Accident. Those Complaints allege that they both sustained burns and other injuries as a result of the Accident.

15. With respect to Armil, the Salgado Lawsuit asserts a claim for negligence (Exhibit A, Salgado Count III). The Moore Lawsuit asserts claims against Armil for negligence, products liability and loss of consortium (Exhibit B, Moore Counts VI, XI and XII). Sipi and Peoples filed cross-claims against Armil under the Illinois Joint Tortfeasor Contribution Act. **Exhibit C** is the Sipi cross-claim and **Exhibit D** is the Peoples Gas cross-claim, as filed in the Moore Lawsuit (without exhibits); they filed identical cross-claims against Armil in the Salgado Lawsuit. (For ease of reference, this Complaint for

Declaratory Judgment refers to all claims and crossclaims against Armil collectively as the "Lawsuits.")

16. The Lawsuits allege that Armil serviced the equipment and systems necessary to operate the Furnace at the Sipi facility, including components of the gas assembly, gas feed and burner controls for the Furnace (collectively, the "Tillie Furnace and Equipment").

17. The Lawsuits allege that Armil designed, built and/or installed various components of the gas assembly, gas feed and burner controls for the Furnace.

18. The Lawsuits allege that Armil negligently failed to properly design, install, service and/or maintain the Tillie Furnace and Equipment, as a result of which the Furnace was not reasonably safe to operate.

19. The Lawsuits allege that the Accident was caused, at least in part, by Armil's negligence in providing service, repairs and/or products to Sipi for the Tillie Furnace and Equipment.

20. Cincinnati did and continues to pay for Armil's defense in relation to the Lawsuits under reservation of rights, through defense counsel selected by Armil.

**B.** **The Cincinnati Policy issued to Armil**

21. Cincinnati issued a policy to Armil under number EPP 000 62 91, which was in effect on the date of the Accident (the "Policy"). The Policy supplies commercial general liability ("CGL") coverage with limits of liability of $1 million each occurrence, and Umbrella coverage with limits of $7 million per occurrence or in the aggregate. A copy of the CGL and Umbrella coverage parts of the Policy is attached as **Exhibit E**.

22. The Policy provides coverage for claims of bodily injury to which the insurance applies. The Insuring Agreement states:

*COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

1. *Insuring Agreement*

    a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"… to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" … to which this insurance does not apply. . . .*

(Exhibit E, Form GA 101 12 04 at p.1; see also US 101 UM 12 04 at p. 1).

23. The Policy contains an exclusion endorsement called "Exclusion – Products–Completed Operations Hazard." This endorsement states:

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

***EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD***

*This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART.*

*This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard."*

(Exhibit E, Form CG 21 04 11 85) (the "Products-Completed Operations exclusion"). The Umbrella coverage part contains an identical exclusion. (Exhibit E, Form US 354 12 04).

24. The Policy defines "Products-Completed Operations Hazard" as follows:

a. *Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:*

   (1) *Products that are still in your physical possession; or*

6

  (2) *Work that has not yet been completed or abandoned. However, **"your work" will be deemed completed at the earliest of the following times**:*

    (a) *When all of the work called for in your contract has been completed; or*

    (b) *When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or*

    (c) ***When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project****.*

  ***Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed****.*

 b. *Does not include "bodily injury" or "property damage" arising out of:*

  (1) *The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;*

  (2) *The existence of tools, uninstalled equipment or abandoned or unused materials; or*

  (3) *Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.*

(Exhibit E, Form GA 101 12 04 at pp. 19-20; US 101 UM 12 04 at p. 19) (emphasis added).

 25. The Policy defines "your work" to mean:

  (1) *Work or operations performed by you or on your behalf; and*
  (2) *Materials, parts or equipment furnished in connection with such work or operations.*

"Your work" also is defined to include:

  (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and*
  (2) *The providing of or failure to provide warnings or instructions.*

7

(Exhibit E, Form GA 101 12 04 at p. 20; US 101 UM 12 04 at p. 20).

    26.    The Policy defines "your product" to mean:

> *(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*
> *(a) You … [and]*
> *(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*

"Your product" is also defined to include:

> *(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*
> *(2) The providing of or failure to provide warnings or instructions.*

(Exhibit E, Form GA 101 12 04 at p. 20; US 101 UM 12 04 at p. 20).

    27.    In Section III – Limits of Insurance, the Policy states:

> *The Products-Completed Operations Aggregate Limit is the most we will pay under COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".*

(Exhibit E, Form GA 101 12 04 at p. 13).

    28.    The declaration page for the CGL coverage part indicates that Products-Completed Operations coverage is excluded ("$ EXCLUDED"), and that no premium was charged for it as such coverage was "EXCL." (Exhibit E, Form GA 532 07 08 at p.1).

    29.    Cincinnati did not agree to issue a liability policy to Armil without exclusions for Products-Completed Operations.

**C.    Additional Information relevant to Coverage**

    30.    During at least the 12 months prior to the Accident, Armil and Sipi had not entered into any written agreement requiring Armil to provide regularly scheduled or

8

ongoing service or maintenance of the Tillie Furnace and Equipment. Instead, Armil made repairs to (or performed other work on) the Tillie Furnace and Equipment only in response to specific requests from Sipi, generally to address some operational issue.

31. On information and belief, Armil's most recent record of service regarding the Tillie Furnace and Equipment prior to the Accident was dated May 2018.

32. On information and belief, for at least 4 weeks prior to the Accident, Armil was not requested or required by Sipi to perform any repairs, maintenance, inspection or other work on the Tillie Furnace and Equipment.

33. On information and belief, Armil did not perform or agree to perform any repairs, maintenance, inspection or other work on the Tillie Furnace and Equipment for at least 4 weeks prior to the Accident.

34. Armil has admitted that it had no personnel present at the Sipi facility on the date of the Accident or at any time during the five days prior to the Accident. See Armil's Answers to Plaintiff's Supplemental Interrogatories, served on June 12, 2020, at pp. 4-5 (copy attached as **Exhibit F**).

35. Sipi used and operated the Tillie Furnace and Equipment in its business throughout at least January 2019, and was operating that Furnace for its intended use on January 30, 2019 when the Accident occurred.

36. On and before January 30, 2019, Armil's work performed at the Sipi facility relating to the Tillie Furnace and Equipment had been put to its intended use by Sipi.

37. Sipi owned, used and/or operated the Tillie Furnace and Equipment and was not "another contractor or subcontractor" working on the Tillie Furnace and Equipment.

38. Plaintiffs' injuries occurred at the Sipi facility and not at any premises that Armil owned or rented.

39. The Lawsuits do not claim that Plaintiffs' injuries arose out of products that were still in Armil's physical possession at the time of the Accident or arose out of any work that Armil had abandoned.

40. The Lawsuits do not claim that Plaintiffs' injuries arose out of any of the categories set forth in section b of the "Products-Completed Operations Hazard" definition: (1) the transportation of property; (2) the existence of tools, uninstalled equipment or abandoned or unused materials; or (3) products or operations for which the classification, listed in the Declarations or in a schedule in the Policy, states that products-completed operations are included.

### COUNT I
### THE PRODUCTS-COMPLETED OPERATIONS EXCLUSIONS BAR COVERAGE FOR THE CLAIMS AGAINST ARMIL

41. Cincinnati repeats and realleges paragraphs 1-40 as if fully set forth herein.

42. The Lawsuits allege that the injuries to Salgado and Moore arose (at least in part) out of Armil's products and/or work regarding the Tillie Furnace and Equipment.

43. As of the date of the Accident, Armil's "work" regarding the Tillie Furnace and Equipment was "completed" within the meaning of the "Products-Completed Operations Hazard" in the Policy.

44. Due to the Products-Completed Operations exclusions, the Policy provides no coverage for any alleged bodily injury arising out of Armil's "your product" regarding the Tillie Furnace and Equipment.

45. Due to the Products-Completed Operations exclusions, the Policy provides no coverage for any alleged bodily injury arising out of Armil's "your work" regarding the Tillie Furnace and Equipment.

46. Cincinnati reserved its right to deny coverage to Armil based on the Products – Completed Operations exclusions, in its reservation of rights letter sent to Armil on October 25, 2019 (attached as **Exhibit G**).

47. Cincinnati is entitled to a declaration that it has no obligation to provide coverage (defense or indemnity) to Armil in relation to the claims and cross-claims asserted against Armil in the Salgado and/or Moore Lawsuits.

48. Cincinnati is entitled to a declaration that it may withdraw from the provision of defense to Armil in relation to the Salgado and Moore Lawsuits.

## COUNT II
## THE INJURIES TO SALGADO AND MOORE AROSE FROM
## A SINGLE "OCCURRENCE" UNDER THE POLICY

49. Cincinnati repeats and realleges paragraphs 1-48 as if fully set forth herein.

50. The declarations for the CGL coverage part state that liability limits for bodily injury are $1 million per occurrence.

51. With respect to claims for bodily injury, the Policy defines an "occurrence" to mean "*an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*" (Exhibit E, form GA 101 12 04 at p. 19; US 101 UM 12 04 at p. 18).

52. Policy Section III, Limits of Insurance, states that the "*Limits of Insurance shown in the Declarations … fix the most we will pay regardless of the number of a.*

*Insureds; b. Claims made or suits brought; or c. Persons or organizations making claims or bringing suits.*" (Exhibit E, form GA 101 12 04 at p. 12).

53. Policy Section III, Limits of Insurance, states that "*the Each Occurrence Limit is the most we will pay for the sum of [damages and medical expenses] because of all bodily injury and property damage arising out of any one 'occurrence.'*" (Exhibit E, form GA 101 12 04 at p. 13).

54. The alleged bodily injuries to Salgado and Moore occurred simultaneously when the explosion occurred.

55. The alleged bodily injuries to Salgado and Moore (including the related claim for loss of consortium) arose from a single "occurrence": the explosion at the Tillie Furnace on January 30, 2019.

56. If the Policy provides coverage at all for Plaintiffs' injuries, which Cincinnati denies, the most that Cincinnati would owe to all parties collectively under the CGL portion of the Policy would be $1 million.

WHEREFORE, for the foregoing reasons, Cincinnati moves this Honorable Court for an order declaring that:

1. Cincinnati has no obligation to defend or indemnify Armil in relation to the claims or cross-claims against Armil in the Salgado or Moore Lawsuits.
2. Cincinnati may withdraw from the defense of Armil in the Lawsuits.
3. In the alternative, should Cincinnati owe coverage to Armil at all for the Salgado or Moore Lawsuits, the maximum total liability that could be owed by Cincinnati under the CGL coverage part is $1 million.

4. Granting Cincinnati such other and further relief that the Court deems just under the circumstances.

Respectfully submitted,

/s/    *Hope G. Nightingale*
      Hope G. Nightingale, one of the attorneys
      for Cincinnati Insurance Company

Hope Nightingale (#06184864)
Christine Beaderstadt (#6326578)
Litchfield Cavo LLP
303 W. Madison, Suite 300
Chicago, IL  60606
312-781-6614 (Nightingale)
Nightingale@LitchfieldCavo.com
312-781-6562 (Beaderstadt)
Beaderstadt@LitchfieldCavo.com
312-781-6630 (Fax)